Case 5:14-cv-05161-TLB   Document 31   Filed 12/17/14   Page 1 of 12 PageID #: 330

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

FERNANDO M. RODRIGUEZ                                                                                          PLAINTIFF

    v.        Civil No.  14-5161; 14-5197; 14-5198

JOSE VEGA a/k/a Federico Vega-Robles or
Jose F. Vega; MS. TORRES, Benton County
Detention Center; OFFICER GARCIA, Rogers
Police Department; JERRY; CHON; DAVID
QUINTERO, Mechanic; JOHN DOE DEPUTIES 1 TO 5,
Benton County Detention Center; ISRAEL CASTILLO
GALVAN;  BENTONVILLE COURT/ROGERS COURT;
OFFICER WASENG XIONG; OZARK
MOUNTAIN POULTRY; MR. LEON and/or
LEON ALVORADA ARCE; JOHN DOE CONSPIRATORS;
and JOHN DOE EX-CELL MATE                                                                                 DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

    Plaintiff filed these consolidated civil rights actions pursuant to 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis.*

    The cases concern the events leading up to the Plaintiff's arrest, his arrest, and his subsequent incarceration in the Benton County Detention Center (BCDC).  The cases are before me for preservice screening under the provisions of the Prison Litigation Reform Act.  Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).


AO72A
(Rev. 8/82)

## 1. Background

Beginning in May of 2004, Plaintiff believes he was targeted by the Rogers Police Department. He asserts he was stopped frequently when he was doing nothing wrong. Plaintiff asserts that from July of 2014, he has been retaliated against as a result of accusing Officer Garcia of using excessive force against him in June of 2014. The excessive force claim is not part of this lawsuit.

On the morning of May 23, 2014, Plaintiff maintains that Jose Vega, his friend and the owner of Arkansas Auto Repair, sexually assaulted him by touching his buttock in public at his place of business. Plaintiff indicates he was sexually assaulted on multiple occasions during the months of April, May, and June of 2014, while he was doing work for Vega. Plaintiff alleges Vega's manner was aggressive, hostile, defiant, and abnormal. Plaintiff also alleges that Vega would invade his personal space by touching him "in the usual form" while he was working in Vega's shop.

Plaintiff asserts Vega refused to pay him for two days of work, was disrespectful to him, refused to allow him to use a car, beat his left hand, used his bodyguard to threaten the Plaintiff, had automatic and semi-automatic rifles in his office, and made Plaintiff clean an area occupied by a sick dog.

Plaintiff asserts that Vega conspired with his friends and other workers. According to Plaintiff, Vega's daughter may be in the country illegally. Plaintiff indicates Vega and his friends, Jerry and his brother Chon, stole, and then kept, the Plaintiff's documents including letters, court records, work, personal, tax, and insurance papers, bills, and his credit report. Plaintiff feared that his information would be used for illegal purposes. When Plaintiff would

ask Vega for his documents, Plaintiff states Vega would offer him presents such as "beer stuff." Plaintiff further alleges that Vega would gain illegal access to his mail.

Plaintiff indicates a co-worker, "Luis," stole $50 from him, hit him in the left leg with his vehicle and simply drove away, and hit him during lunch on an unspecified day.

Plaintiff reported to Officer Garcia the information about the hit and run incident as well as advising him that Jerry and Chon had intercepted his mail, and stolen documents from him. Plaintiff states Officer Garcia responded that these acts did not constitute criminal offenses.

With respect to Officer Waseng Xiong, Plaintiff states that he came to Plaintiff's apartment on June 28, 2014, to arrest him on a warrant for failure to make a monthly payment of $100 towards his fines. Plaintiff walked and/or ran away because he feared that Officer Xiong was acting out of retaliation for Plaintiff having filed a lawsuit against Officer Garcia.[1] Plaintiff stopped behind a neighbor's house, put his hands in the air, and then got down on the ground. Plaintiff alleges that when he tried to explain to Officer Xiong about Officer Garcia, Officer Xiong responded by pointing his pistol at the Plaintiff and tightening the handcuffs. Plaintiff asserts that "[f]or $100 dollars [Officer Xiong] do not need [to] use his pistol." Doc. 15 at ¶ 2(I). Plaintiff's opinion was that Officer Xiong did not want to use his pistol. Id. at ¶ 2(K). With respect to the handcuffs, Plaintiff alleges he was lying down on the ground trying to explain to Officer Xiong why he ran. In response, Plaintiff asserts that Officer Xiong tightened the handcuffs and almost broke Plaintiff's wrist. Id. at ¶ 2(N).

---

[1] Plaintiff indicates he filed the lawsuit agianst Garcia approximately one month before the June 28, 2014, incident. However, a search of CM/ECF does not reveal any cases filed by the Plaintiff in or around May of 2014. Plaintiff did not provide the Court with a case number.

Plaintiff also names five John Doe deputies of the BCDC. Plaintiff maintains they used excessive force against him in the booking area of the BCDC late in the night on February 18, 2003.

With respect to David Quintero, Plaintiff indicates he owns an automobile sales and repair shop, G.A.M. Auto Sales, and refused to pay Plaintiff his salary. Plaintiff alleges Quintero manipulated the system and discriminated against him. He further alleges that while he was working in Quintero's home he saw him looking into the Plaintiff's wallet which contained his social security card and other personal items. Plaintiff indicates his wallet was stolen by someone at the house. Plaintiff also alleges that he left his brief case in Quintero's truck and it was not returned to him for two days.

Plaintiff indicates both Vega and Quintero refused to allow him to go to an appointment with probation, allowed others to call the probation office and give false excuses on his behalf, refused to allow him to use a car, leaving him with no transportation, and gave him bad references, making him unable to find further employment.

With respect to Mr. Leon and/or Leon Alvorada Arce, Plaintiff contends he failed to pay him for work done in remodeling a duplex.

With respect to Israel Castillo Galvan, Plaintiff maintains he stole the Plaintiff's pearl white 1998 Nissan Maxima.

With respect to Ozark Mountain Poultry, Plaintiff states it discriminated against him by failing to hire him.

With respect to Ms. Torres,[2] Plaintiff indicates she was working at the BCDC in September of 2012, when he was booked into jail on a charge of failure to appear. Plaintiff alleges that on an unspecified date between September 18th and 22nd, he gave Ms. Torres a letter attached to a request form. Ms. Torres placed the request in the request forms basket. She told the Plaintiff that she would send the letter and provide him with a copy of it. Plaintiff maintains the letter went missing. A few days later, he asked Ms. Torres about the letter and she responded "what letter." Plaintiff spoke to Captain Sparks regarding the incident and was told that Ms. Torres no longer worked there.

Plaintiff indicates he owes court fees and between serving his jail time, not being paid for his work and/or being paid less than minimum wage, he has been unable to pay the fees or do his community service. He believes he has been targeted by the Court and Prosecuting Attorney with respect to efforts to collect the fees including the issuance of warrants. Plaintiff maintains he has been unable to improve his life because of the actions taken against him and his obligations.

He maintains the person responsible for collecting fees at the Bentonville Court during 2012 attempted to collect the fees he owed by using the name and information of another inmate.

He asserts that the person processing mail at the Rogers Court threw away some letters he sent in February of 2014 asking for credit for his time served and for a ticket payment he had made. He also indicates someone at the court either lost or threw away his application for a public defender. He states he let both courts know he was in jail and could not make his payments or do his community service.

---

[2] Plaintiff was asked to complete and file an addendum (Doc. 15) to the complaint. The addendum deals primarily with Plaintiff's claims against Ms. Torres and Officer Xiong.

On February 18, 2014, while he was incarcerated at the BCDC, Plaintiff alleges a new young cell-mate touched his buttock inappropriately. Plaintiff did not know the name of the cell mate but he did submit a grievance about the incident.

## 2. Discussion

Pursuant to 28 U.S.C. § 1915(e)(2), the Court has the obligation to screen any complaint in which an individual has sought leave to proceed IFP. 28 U.S.C. § 1915(e)(2). On review, the Court is to dismiss the complaint, or any portion of the complaint, that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

This case is subject to dismissal. First, a Plaintiff may only bring a suit under 42 U.S.C. § 1983 against a person acting under color of state law to remedy constitutional violations or violations of certain rights created by federal statute. See e.g., Carlson v. Roetzel & Andress, 552 F.3d 648, 650 (8th Cir. 2008). "The under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Id.* (citation and internal quotation marks omitted).

Jose Vega, David Quintero, Israel Castillo Galvan, Plaintiff's ex-cell mate (not yet identified by name), Jerry, Chon, Mr. Leon and/or Leon Alvorada Arce, and Ozark Mountain Poultry are all private individuals.[3] While Plaintiff makes some vague allegations of a conspiracy between these individuals and the "John Doe Conspirators," the allegations are clearly insufficient under § 1983. For a conspiracy to transform the actions of a private individual into actions under color of state law, Plaintiff must show that "a private actor caused

---

[3] Plaintiff at various places mentions other private individuals who are not currently named as Defendants. For example, he mentions Felipe as being an accomplice of Vega's.

a deprivation of constitutional rights" and "willfully participated with state officials and reached a mutual understanding concerning the unlawful objective of a conspiracy." Dossett v. First State Bank, 399 F.3d 940, 951 (8th Cir. 2005); see also Sanders v. City of Minneapolis, MN, 474 F.3d 523, 527 (8th Cir. 2007)(private actors may incur § 1983 liability only if they are willing participants in joint action with the state or its agents acting under color of state law). No such allegations are made in this case.

Second, no cause of action exists against Ozark Mountain Poultry under § 1983. It is a private company or corporation and does not act under color of state law. Plaintiff may, however, have a valid claim against it based on federal employment discrimination laws such as Title VII. If Plaintiff believes he has such a claim, he may file a case in this Court after first filing a charge with the Equal Employment Opportunity Commission and obtaining a notice of right to sue from it.

Third, the claims against the Five John Doe Deputies are barred by the statute of limitations. Plaintiff alleges the five deputies used excessive force against him in February of 2003. These consolidated cases were not filed until 2014. Section 1983 does not contain its own statute of limitation. Instead, causes of action under § 1983 are governed by "the most appropriate or analogous state statute of limitations." Goodman v. Lukens Steel Co., 482 U.S. 656, 660 (1987)(§ 1981 case); Wilson v. Garcia, 471 U.S. 261, 268 (1985)(§ 1983 case). In Arkansas, this is the three year personal injury statute of limitations, Ark. Code Ann. 16-56-105(3) (2005). See Miller v. Norris, 247 F.3d 736, 739 (8th Cir. 2001)(Ark. Code Ann. § 16-56-105(3) is the statute of limitations applicable to § 1983 cases). Thus, any claims based on events that occurred in 2003, would be barred by the statute of limitations.

AO72A
(Rev. 8/82)

Fourth, the claims against Officer Garcia are subject to dismissal. There is no constitutional right to have law enforcement officials investigate a reported crime. See e.g., Sheets v. Mullins, 287 F.3d 581 (6th Cir. 2002)(no due process or equal protection violation by sheriff's department sergeant in responding to a call reporting domestic violence); Doe v. Mayor and City of Council of Pocomoke City, 745 F. Supp. 1137, 1139 (D. Md. 1990)("The Court is not aware of a constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime."). "The Due Process Clause of the Fourteenth Amendment does not impose upon the state an affirmative duty to protect its citizens [against illegal private acts], but rather, places limitations on affirmative state action that denies life, liberty, or property without due process of law." Kallstrom v. City of Columbus, 136 F.3d 1055, 1065 (6th Cir. 1998)(citing DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 195 (1989)).

"[F]ederal courts are not entrusted with the responsibility of ensuring the effective enforcement of state criminal laws; that role falls to state and local law enforcement authorities. It is the duty of executive officials–not the courts–to take care that the criminal laws are faithfully executed." Jennings v. City of Stillwater, 383 F.3d 1199, 1205 (10th Cir. 2004)(citing U.S. Const., art. II, § 3; Morrison v. Olson, 487 U.S. 654, 690 (1988)); see also Slagel v. Shell Oil Refinery, 811 F. Supp. 378, 382 (C.D. Ill. 1993)(police officer had no constitutional duty to conduct investigation of plaintiff's assault charge), *aff'd* 23 F.3d 410 (7th Cir. 1994). In short, "the law is clear that a private citizen has no constitutional, statutory, or common law right to require a public official to investigate or prosecute a crime." Woods v. Miamisburg City Schools, 254 F. Supp. 2d 868, 873 (S.D. Ohio 2003)(citations omitted).

Fifth, to the extent Plaintiff challenges actions taken by the state courts, those claims fail. "[T]he United States Supreme Court alone has jurisdiction to review state court decisions. [T]he lower federal courts lack subject matter jurisdiction to consider federal claims that would vitiate an underlying state court judgment." Johnson v. City of Shorewood, Minnesota, 360 F.3d 810, 818 (8th Cir. 2004)(citations omitted).

Sixth, to the extent Plaintiff alleges his constitutional rights were violated by the issuance of citations, the fines/court costs assessed, and by various aspects of the proceedings against him, no § 1983 claims are cognizable. In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held that a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. 486-87. This has not occurred.

Seventh, his claim against Ms. Torres is subject to dismissal. No plausible claim is stated with respect to the single item of mail Plaintiff alleges was lost. Plaintiff has not alleged that there was any ongoing practice of censorship or that the application of any policy resulted in the alleged interference with his mail. See e.g., Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003)(Plaintiff must show regular and unjustifiable interference--an isolated incident of mail tampering is usually insufficient to establish a constitutional violation).

Finally, his claim against Officer Xiong is subject to dismissal. "All claims that law enforcement officers have used excessive force in the course of an arrest or investigatory stop of a free citizen should be analyzed under the reasonableness standard of the Fourth

AO72A
(Rev. 8/82)

Amendment." Winters v. Adams, 254 F.3d 758, 764 (8th Cir. 2001)(citation omitted); see also Henderson v. Munn, 439 F.3d 497, 502 (8th Cir. 2006). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989)(internal quotations omitted). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*.

` "Objective reasonableness depends on the facts and circumstances of the case, the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." Rohrbough v. Hall, 586 F.3d 582, 586 (8th Cir. 2009)(internal quotations and citations omitted). This inquiry is made "without regard to [the officers'] underlying intent or motivation." Nance v. Sammis, 586 F.3d 604, 609-10 (8th Cir. 2009).

The Courts have specifically held that drawing a gun and pointing it at a prisoner without any indication that he intended or attempted to fire the gun, does not rise to the level of a constitutional violation. Edwards v. Giles, 51 F.3d 155, 157 (8th Cir. 1995); see also Wilkins v. May, 872 F2d 190, 194 (7th Cir. 1989)("Where the officer merely points a gun at a suspect in the course of arresting him, the suspect would have no basis for claiming that he had been seized with excessive force in violation of the Constitution"). In this case, Plaintiff states that Officer Xiong made a gesture which indicated to the Plaintiff that Officer Xiong did not want to use the gun. Doc. 15 at ¶ 2(K). Plaintiff maintains that Officer Xiong had no reason to point the gun at him. Id. at ¶ 2(L). Plaintiff asserts that he could have been shot accidentally. Id. Plaintiff does not allege

-10-

that Officer Xiong intended to, or attempted to, fire the gun. This is insufficient to state a plausible claim.

Plaintiff also contends Officer Xiong tightened Plaintiff's handcuffs when he attempted to explain why he fled. Plaintiff maintains that Officer Xiong had no reason to tighten the cuffs because Plaintiff was following Officer Xiong's orders at this point. While Plaintiff makes the conclusory statement that the handcuffs were tight enough to almost break his arm, Plaintiff does not allege that he suffered any actual injury. .

The Eighth Circuit has held that "allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are [not] sufficient to support [a] claim of excessive force." Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990); see also Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006)(relatively minor scrapes and bruises coupled with a less-than-permanent aggravation of a prior shoulder condition were *de minimis* injuries that did not support an excessive force case).

### 3. Conclusion

For the reasons set forth above, I recommend that this case be dismissed as all claims asserted are frivolous, fail to state claims upon which relief may be granted, or are not presently cognizable. *See* 28 U.S.C. § 1915(e)(2)(B)(i)- (iii) (in forma pauperis action may be dismissed on such grounds at any time).

Plaintiff has asserted that Jose Vega, David Quintero, and Mr. Leon/Leon Alvorada Arce, failed to pay him for work he performed. If Plaintiff intends to file a suit against them under the Fair Labor Standards Act, he should be instructed to assert that claim in a complaint that is limited to that issue.

-11-

As noted above, if Plaintiff intends to assert an employment discrimination action under Title VII against Ozark Mountain Poultry, he should be instructed that he must first obtain a notice of right to sue from the Equal Employment Opportunity Commission.

**The Plaintiff has fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The Plaintiff is reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 17th day of December 2014.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)